475 So.2d 994 (1985)
3-M CORPORATION  McGHAN MEDICAL REPORTS DIVISION, Appellant/Cross-Appellee,
v.
Gay BROWN, Appellee/Cross-Appellant.
No. BA-224.
District Court of Appeal of Florida, First District.
September 19, 1985.
*995 Rutledge R. Liles of Howell, Liles, Braddock & Milton, Jacksonville, for appellant/cross-appellee.
Robert F. Spohrer and John S. Mordecai of Zisser, Robison, Spohrer, Wilner & Harris, Jacksonville, for appellee/cross-appellant.
*996 PER CURIAM.
This cause is before us on appeal and cross appeal from a final judgment entered on a jury verdict in favor of plaintiff/appellee in a suit for personal injuries allegedly resulting from the rupture of a mammary implant manufactured by defendant/appellant. The seven issues raised on appeal and one issue asserted on cross appeal are set out hereafter. On consideration of the oral arguments, briefs, and record, we hold that appellant's points are well taken and that the errors below require remand for a new trial. We also find merit in the issue on cross appeal.
Briefly stated, the facts are that, on May 26, 1976, plaintiff underwent cosmetic plastic surgery for implantation of gel-filled breast prostheses. The surgery was successful, and it was not until July, 1982, that plaintiff noticed lumps in her breast. At that time, she was examined by the first of several doctors, and it was ultimately determined that the left breast implant had ruptured and allowed the escape of silicone gel. Surgery was performed to remove the escaped gel, but all of the gel was not removed. A new mammary implant was inserted in the left breast; the right implant was not replaced. Several small lumps of silicone gel from the ruptured implant remain in plaintiff's left breast.
Suit was filed, alleging that the implant was negligently manufactured and defective, and seeking damages based on breach of implied warranty, negligence, and strict liability. The complaint also sought punitive damages, but the trial court granted the defendant's motion for summary judgment as to that portion of the complaint on the grounds that defendant was a successor corporation to the manufacturer of the subject implant and therefore had no liability for punitive damages for the alleged defects. On cross appeal, appellee assigns as error the entry of summary judgment on the punitive damage issue.
At trial, the following rulings were made, which are the subject of this appeal.

I.
Dr. Michael Pardue, a certified plastic surgeon, was allowed to testify concerning defects and ruptures of the Model 81 McGhan implant, despite objection that the case herein involved a Model 80 McGhan implant, and that there was a failure to establish a predicate for the introduction of the evidence relating to another type of implant. Plaintiff argued below and in this court the theory that defendant's surgical implants were defective because the outer envelope was too thin and of insufficient strength and because the silicone gel filler was too fluid and lacked cohesivity. The record, however, does not support the theory that these alleged defects (envelope too thin and gel too fluid) were related to the spontaneous rupture in the Model 81 implants and that the Model 80 was substantially and materially similar in that regard so that evidence of ruptures in one model could be considered a basis for finding defects in the other model.
The record, in fact, tended to establish that the two models were significantly different in design and that the difference in design was the basis for the spontaneous ruptures of the later model. Specifically, the evidence showed that the Model 80 implant was round, without a suture tab, whereas the Model 81 was a contoured, tear-shaped implant with a suture tab. Evidence also tended to show that the instances of spontaneous rupture involving the Model 81 implant were related to the existence of the suture tab in the design. There being no proper predicate laid, the evidence relating to the other type of implant was improperly admitted and highly prejudicial. The rule is stated most recently in Voynar v. Butler Manufacturing Company, 463 So.2d 409, 413 (Fla.4th DCA 1985):
The judge also properly excluded evidence of prior accidents. The proffer demonstrated that of the eight accidents sought to be introduced, only two involved the Butlerrib II panels. In both of these accidents, the panels were installed on a four in twelve slope  a slope eight times as steep as that involved *997 here. Evidence of prior accidents is not admissible unless the proffer demonstrates they involved the use of the same type of equipment under substantially similar conditions. Lasar Manufacturing Co. v. Bachanov, 436 So.2d 236 (Fla.3d DCA 1983). [emphasis added]
In Railway Express Agency v. Fulmer, 227 So.2d 870, 873 (Fla. 1969), the Florida Supreme Court held: "Evidence of the occurrence or non-occurrence of prior accidents is admissible only if it pertains to the use of the same type of appliance or equipment under substantially similar conditions."

II.
Richard Compton, a former shareholder and vice president of the defendant corporation, was allowed to testify concerning his awareness of the existence of spontaneous ruptures of other implants manufactured by his company. On cross-examination, Mr. Compton properly was asked about any reports of spontaneous ruptures of the Model 80 implant, and he replied that there were none. Thereafter, the plaintiff sought to cross-examine Mr. Compton, over objection by the defendant, on the reported ruptures of the Model 81 product. This improper cross-examination allowed the jury to infer that the witness was lying, although he testified truthfully concerning no reports of ruptures of Model 80, and his subsequent testimony as to spontaneous ruptures concerned a different product, Model 81.

III.
The deposition of Thomas Talcott, a biomaterials engineer was read to the jury, as follows:
Q. [plaintiff's counsel] Are you familiar with the product manufactured in 1976 by the McGhan Medical Corporation?
A. Yes.
Q. Which was known as the Model 80 gel-filled mammary prosthesis?
A. Yes.
Q. What was your familiarity with that product?
A. Well, the familiarity with that product is that product had a ultrasoft gel and some previous products to that at Heyer-Shulte had ultrasoft gels and they had captured a large share of the mammary prosthesis market.
Q. Mr. Talcott, what specifically is your opinion as to why that product is defective?
A. I believe it's defective in that the gel is too soft and shows an excessive involvement with the tissue.
Defendant's objections to the testimony for lack of predicate should have been sustained. The questioning here is objectionable on at least two grounds. First, counsel's last question, supra, assumes the existence of a defect, a fact not testified to by the witness. Also objectionable is the fact that the answer sought to be elicited from the witness (i.e., product has "defect") tells the jury how to decide the case, is not helpful, and may, in fact, be misleading.[1] The personal opinion of this witness that "the gel is too soft and shows an excessive involvement with the tissue" does not establish *998 that the product is defective; it must also appear that these characteristics cause the product not to conform to generally accepted scientific or medical standards, criteria, or practices.

IV.
In rebuttal, plaintiff offered various items of evidence tending to show changes made in the company's implants. This rebuttal was improper as seeking to inject matters outside the scope of the direct and to raise an inference that the product was defective because there have been changes in specifications.[2]

V.
The Surgitek report, relating to implants manufactured by defendant's competitor, was admitted, over objection, into evidence to support the testimony of Mr. Batich, plaintiff's expert. This witness testified that he had accepted the study at face value, although it was a promotional test to show the superiority of the Surgitek product. It was not improper for the witness to consider the report; however, the report itself is hearsay and inadmissible.
The court's stated reason for allowing the study to come into evidence was Section 90.704, Florida Statutes, which allows materials contained in printed matters to be used in cross-examination of an expert witness if the expert recognizes the material as authoritative or if the court so finds.[3] Here, the expert served as a conduit for placing inadmissible evidence before the jury.[4]

VI.
We find it unnecessary to consider plaintiff's contentions concerning the manifest weight of the evidence in view of the issues already addressed concerning evidence improperly admitted which require remand for a new trial.

VII.
Dr. Rosenthal was erroneously allowed to testify as to the "possibility" of future medical treatment and complications. Over objection by defendant and despite the testimony of all doctors testifying that plaintiff was at no greater risk than other women for cancer, Dr. Rosenthal was allowed to testify concerning the possibility of a mastectomy. This evidence was improperly admitted and cannot be considered harmless. Crosby v. Flemming and Sons, Inc., 447 So.2d 347 (Fla.1st DCA 1984), a recent decision of this court, affirmed the trial court's award of a new trial following a jury verdict in a personal injury action in which the treating physician had been allowed to testify in a speculative fashion concerning possible future medical problems, and this court held at 349: "Indeed, Dr. Hocker's opinion as to Crosby's future difficulties was merely couched in terms of `possibilities' which are simply not probative of his future damages."

CROSS APPEAL
Finally, we address the issue on cross appeal as to whether the trial court abused its discretion in determining as a matter of law that defendant was not liable for punitive damages because it was a successor corporation to the original manufacturer. We find this was error.[5] The basis of the trial court's ruling on this point was itself a mixed question of law and fact as to the nature of the transfer of rights and duties between the original corporation and its successor.
*999 In remanding for a new trial, we do, of necessity, hold that plaintiff's case for compensatory damages was infected with harmful error, requiring that the verdict and judgment be set aside. We do not, however, preclude on remand the introduction by either party of proper evidence bearing on the issues made by the pleadings.
Accordingly, the judgment below is reversed and the cause remanded for further proceedings in accordance herewith.
BOOTH, C.J., and SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] 1 Ehrhardt Florida Evidence § 703.1 at 406-407 (2d ed. 1984):

In Florida, prior to the adoption of the Code, a witness was allowed to testify to an ultimate fact. For example, a physician was permitted to express his opinion as to the cause of bruises and contusions on the victim's throat. Section 90.703 codifies this principle by providing that opinion testimony is not objectionable solely because it "includes an ultimate issue to be decided by the trier of fact."... .
The abolition of the rule against opinions on ultimate issues does not mean that all opinions are admissible. Witnesses will be prevented from expressing their conclusions when the opinion only tells the jury how to decide the case and does not help it to determine what occurred. For example a witness cannot express his or her opinion as to the guilt or innocence of a criminal defendant. These opinions are not helpful to the jury and may be misleading. In this situation, the credentials and demeanor of the witness are being used to impress the jury, rather than his testimony. [footnotes omitted]
[2] Section 90.407, Florida Statutes:

Subsequent Remedial Measures  Evidence of measures taken after an event, which measures if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event.
[3] Even when used for cross-examination, however, the printed matter itself is not admissible. 1 Ehrhardt Florida Evidence § 706.1 at 423-425 (2d ed. 1984).
[4] Id. at § 704.1 at 411-414.
[5] Celotex Corp. v. Pickett, 459 So.2d 375 (Fla.1st DCA 1984).