John P. HANLON and Shirley Ann Hanlon, Plaintiffs,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants.

Frank J. GIBBONS and Helen Gibbons, Plaintiffs,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants.

Nos. C 80–4072, C 80–4097.

United States District Court, N.D. Iowa, W.D.

Jan. 24, 1984.

Richard H. Middleton, Jr., Savannah, Ga., Ronald L. Motley, Barnwell, S.C., Harry H. Smith, Sioux City, Iowa, for plaintiffs.

Robert E. Beebe, Sioux City, Iowa, for Johns-Manville Sales Corp.

T.M. Whicher, Daniel T. Cutler, Sioux City, Iowa, for Celotex Corp.

James W. Redmond, Marvin F. Heidman, Sioux City, Iowa, for Owens-Corning Fibreglass.

Roy M. Irish, James A. Lorentzen, Des Moines, Iowa, for Fibreboard Corp.

Terrence A. Hopkins, Thomas J. Logan, Des Moines, Iowa, for Unarco Industries.

E. Ralph Walker, William W. Schwarz, Des Moines, Iowa, for GAF Corp.

Kenneth Sacks, Council Bluffs, Iowa, John A. Rickerson, Omaha, Neb., for Armstrong World Ind.

Michael Figenshaw, Des Moines, Iowa, for Raybestos-Manhatton.

Milton A. Katskee, Omaha, Neb., David F. McCann, Council Bluffs, Iowa, for Nicolet Industries.

James M. Cosgrove, Lawrence D. Kudej, Sioux City, Iowa, for Forty-Eight Insulation.

John R. Timmermier, Omaha, Neb., John M. Burns, Council Bluffs, Iowa, for Eagle-Picher Industries.

Emmet Tinley, Council Bluffs, Iowa, for Keene Corp.

Mayer Kanter, Sioux City, Iowa, Timothy J. Walker, Jaki K. Samuelson, Des Moines, Iowa, for H.K. Porter Co.

Ronald A. Riley, Des Moines, Iowa, for Pittsburgh-Corning.

Ronald A. Riley, Des Moines, Iowa, for Combustion Engineering.

Paul J. Yaneff, Sioux City, Iowa, for Amatex Corp.

Philip Willson, Council Bluffs, Iowa, for Garlock Inc.

T.M. Whicher, Daniel T. Cutler, Sioux City, Iowa, for Carey Canada.

J. Patrick Ryan, N. Richard Willia, Sioux City, Iowa, for LaVelle Industries.

Thomas A. Finley, Des Moines, Iowa, for Rhopac Inc.

Michael P. Cavel, Omaha, Neb., Daniel C. Galvin, Sioux City, Iowa, for Rock Wool Mfg.

Daryl L. Hecht, David R. Crary, Sioux City, Iowa, for Henning Asbestos & Packing.

Robert W. Green, Sioux City, Iowa, for U.S. Mineral Products.

Mayer Kanter, Sioux City, Iowa, Robert Fanter, Des Moines, Iowa, for Standard Asbestos Mfg. & Insulation.

David J. Blair, Sioux City, Iowa, for A C & S.

Paul W. Deck, Jr., William G. Deck, Sioux City, Iowa, for Ryder Industries.

## ORDER

DONALD E. O'BRIEN, District Judge.

This matter comes before the Court on a motion for partial summary judgment filed by Defendant Celotex on August 31, 1983. The motion asks that the plaintiffs' claims for punitive damages in the above-named actions be stricken and states three separate grounds in support. The motion was joined in its entirety by Defendant Keene on September 6, 1983 and by Defendant GAF on September 8, 1983. Paragraphs 1 and 2 only of the motion were joined by Defendant Fibreboard on September 12, 1983. Finally, ¶¶ 2 and 3 of the Celotex motion were joined by Defendant Raymark (filing a separate brief) on October 24, 1983, and by Defendant Owens-Corning on October 18, 1983. As previously stated, these defendants all request that the plaintiffs' claims for punitive damages be stricken from the pleadings. A hearing was held in Sioux City, Iowa on December 19, 1983. At this hearing, several motions besides those specified above were discussed. This Order, however, will deal only with those motions filed by the above specified defendants asking that the plaintiffs' claims for punitive damages be struck from the pleadings. After carefully considering the arguments of counsel made at the hearing and in their briefs, the Court finds that the motions to strike the plaintiffs' claims for punitive damages should, at this stage of the litigation, be denied, with the possibility for reconsideration upon presentment to this Court by defendants of further support for their motions, as will be discussed herein.

### I. *Punitive Damages Against Successor Corporations*

The Defendant Celotex has presented to the Court evidence by way of affidavits and exhibits demonstrating that it is the successor corporation to a firm that it alleges manufactured and/or sold the products or a portion of the products that the plaintiffs in this action now claim to have been defective. Celotex argues that because it is not the corporation responsible for the sale or manufacture of these products, it should not be held responsible for punitive damages in a products liability action even if it can be held liable for the actual damages that may have been suffered by the plaintiffs. In support of this position, Celotex cites the Court to several Iowa cases concerning punitive damages, including *Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983). In *Briner*, the Iowa Supreme Court held that a corporation may be subjected to punitive damages for the acts of an employee only if the acts were

authorized by the corporation, if the employee was unfit and the principal reckless in employing or retaining him, if the employee was acting in a managerial capacity and within the scope of his employment, or if the corporation ratified or approved the act of the employee. *Id.*, at 866. Celotex argues that it cannot be held liable for punitive damages in this situation because none of the tests set forth in *Briner* for the imposition of punitive damages can be satisfied.

Assuming the allegations made in the motion to be true, this Court agrees that the test for the imposition of punitive damages in Iowa as to the Defendant Celotex cannot be satisfied, as no employees or agents of Celotex were involved. The issue presented by this motion, however, is not whether Celotex itself committed any act through its officers or employees through which it may be subjected to punitive damages. Rather, the question involved is whether liability for punitive damages can be transposed from a predecessor corporation to its successor.

■ The general rule is that a corporation that purchases the assets of another corporation will not be held responsible for the liabilities of the selling corporation. 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, §§ 7122, 7123 (Revised Permanent Ed.1973 & Supp.). Four exceptions to that rule are recognized in Iowa law: (1) Where there is an express agreement to assume liability; (2) where there is a consolidation or merger; (3) where the purchasing corporation is a "mere continuation" of the selling corporation; and (4) where the transaction is fraudulent. *Nelson v. Pampered Beef-Midwest, Inc.*, 298 N.W.2d 281, 287 (Iowa 1980). Appendix 1 in Exhibit B, attached to the Celotex motion for partial summary judgment, is a copy of a merger agreement between Celotex and Panacon Corporation. Panacon is alleged by Celotex to be the predecessor corporation from which it, Celotex, acquired potential liability to the plaintiffs. Section 11 of the merger agreement provides in part that "all debts, liabilities and duties of Panacon shall upon the effective date of the merger attach to Celotex and may be enforced against it to the same extent as if such debt, liabilities and duties had been incurred or contracted by Celotex." It is, therefore, apparent from the material provided by Celotex that the transaction between it and Panacon met at least two of the above recognized exceptions to the nonliability rule in that there was an express agreement to assume all liability and the transaction constituted a merger between two corporations.

■ Celotex further argues that the goals of imposing punitive damages as articulated by the Iowa Supreme Court would not be met by imposing such liability on Celotex in this case. Specifically, Celotex argues that part of the justification for punitive damages in Iowa is a desire to punish offenders for their outrageous acts. *See Briner v. Hyslop, supra*, 337 N.W.2d, at 866–67. Celotex argues that it would be pointless to impose punitive damages on it in this situation as it performed no acts for which it should be punished. The Iowa Supreme Court, however, has also stated that general deterrence to others is an alternative justification for punitive damages. *Id.*, at 865. In the present case, the plaintiffs have alleged that an act was done so outrageous in nature that punitive damages should be imposed. It is true that this act was not performed by the Defendant Celotex but by its predecessor corporation now combined with Celotex through a merger. The imposition of punitive damages on Celotex would be for the act of its predecessor and would stand as an example to others, thus meeting the goal of general deterrence expressed by the Iowa Supreme Court. This Court finds the arguments of Celotex against imposing punitive damages on a successor corporation to be unpersuasive.

In support of this ruling, the Court has found limited but unanimous authority. In *Western Resources Life Ins. Co. v. Gerhardt*, 553 S.W.2d 783, 787 (Tex.Civ.App. 1977), it was held that a successor corporation that is in large part a continuation of

the predecessor assumes liability for all tort claims against the predecessor, including exemplary damages. In *Investors Preferred Life Ins. Co. v. Abraham*, 375 F.2d 291, 295 (10th Cir.1967), punitive damages were allowed against a successor corporation when it was found that the successor took over the business and assumed the liabilities of the predecessor. In *Thomas v. E.J. Korvette, Inc.*, 329 F.Supp. 1163, 1169–70 (E.D.Pa.1971), it was held that a successor corporation which has acquired all the assets of an ongoing business has assumed responsibility for outstanding tort claims, including exemplary damages. Finally, in *Moran v. Johns-Manville Sales Corp.*, 691 F.2d 811, 816 (6th Cir.1982), it was pointed out that in a jurisdiction that bases the imposition of punitive damages on general deterrence, as does Iowa in part, the fact that the defendant has ceased the offending conduct is irrelevant, as the exemplary damages may be used as a future deterrence to others. This Court finds, therefore, that the status of Celotex as a successor corporation does not prevent it from being subjected to punitive damages for the acts of its predecessors in the manufacture and/or sale of defective products.

This section of the Celotex motion discussed above has been joined by Defendants Keene, GAF, Fibreboard, and Raymark. These defendants have not, however, supported their assertions that they are successor corporations by the filing of affidavits or other supplementary material as required by rule 56 of the Federal Rules of Civil Procedure. Their motions must, therefore, also be denied to the extent they rely on ¶ 1 of the Celotex motion. This Court's ruling on the motion of Celotex should not be construed as a holding that all successor corporations must be subject to punitive damages for the acts of their predecessors, nor may it be viewed as a comment on the law of successor liability in general for the State of Iowa as it affects these defendants. Without further input, however, this Court is unable to properly consider the motions of those defendants that have joined in ¶ 1 of the Celotex mo-

tion and, therefore, those motions will be denied to the extent they rely on ¶ 1.

## II. *Multiple Claims for Exemplary Damages*

The next two arguments made by Celotex are based upon the assertion that Celotex and several other defendants in these actions are currently defending a large number of civil suits across the country engendered by the same products that are the subject of the present actions before this Court. Celotex argues first that punitive damages are inappropriate in multijurisdictional/multiclaimant litigation in that the defendants are exposed to the possibility of overkill and exhaustion of corporate assets when subjected to a very large number of civil suits involving essentially the same claims. To support this argument, Celotex has provided the Court with an affidavit from Robert W. Emerton, III, Assistant Vice President of the Celotex Corporation, stating that Celotex was the named defendant in excess of 10,000 lawsuits nationwide alleging asbestos related personal injuries. The second argument made by Celotex in relation to its large exposure to civil suits is that punitive damage awards against it in such a large number of cases would be an improper burden on commerce under Article I, § 8, of the United States Constitution; would violate the due process rights of Celotex under the Fifth and Fourteenth Amendments to the United States Constitution; and would constitute, in effect, criminal sanctions against Celotex requiring various constitutional protections.

The Court has examined the authorities cited by Celotex in support of its position that multiple claims for punitive damages should not be allowed in cases such as this. The Court must agree that the authorities cited raise serious questions concerning the constitutionality and the social desirability of imposing upon a single defendant liability for such a large number of punitive damage claims so as to threaten the defendant's corporate existence. The Court would note in particular Judge Friendly's

examination of the issue in *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir.1967). In *Roginsky*, Judge Friendly pointed out that "[t]he legal difficulties engendered by claims for punitive damages on the part of hundreds of plaintiffs are staggering." *Id.*, at 839. The Court of Appeals for the Second Circuit went on to say, however, that it knew "of no principle whereby the first punitive award exhausts all claims for punitive damages and would thus preclude future judgments." *Id.* Therefore, while recognizing the gravity of the problem, the Second Circuit was unable to resolve the issue and, in fact, decided the case before it on alternative grounds.[1]

More convincing authority for the position of Celotex is provided in the case of *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970), also cited in the defendant's brief. In *Globus*, the Court of Appeals for the Second Circuit held that § 17(a) of the Securities Act of 1933, while providing a private cause of action against security underwriters, did not allow the recovery of punitive damages in such actions. Of primary importance to the Court of Appeals in reaching its decision was the possibility that a single underwriter could be exposed to an unreasonable amount of punitive damage claims due to the fact that every person who reads the underwriter's prospectus could conceivably claim injury. *Id.*, at 1285. The *Globus* case, however, may go too far to be of benefit to the defendants in the present case. The *Globus* court held that punitive damages were never recoverable upon the claims before it, without regard to the number of plaintiffs involved.[2] Celotex and the other defendants in the present case, however, do not argue that punitive damages may never be recovered in a personal injury case but, rather, only that in cases involving multiple claimants

in multiple jurisdictions should punitive damages be limited. Even the court in *Globus* expressed doubt as to the validity of a rule that would provide a windfall to certain litigants and deny the same recovery to others. *Id.*, at 1285–86. This Court feels, therefore, that the defendants have provided no direct authority for the position that they are asking this Court to take on the issue of punitive damages.

The plaintiffs cite the Court to the case of *Moran v. Johns-Manville Sales Corp.*, 691 F.2d 811 (6th Cir.1982), a case also involving asbestos related personal injuries. The Court of Appeals for the Sixth Circuit, while recognizing the difficulties presented by multiple punitive damage claims against a single defendant, refused to limit punitive damages in the case before it on the grounds that such action is better left for the state or federal legislature. *Id.*, at 817. The defendants respond by pointing out that *Moran* interpreted Ohio law, suggesting that Iowa law contains significant differences that weigh in favor of the defendants' position.

■ The Court finds that, while the defendants' arguments on this very difficult question are not without merit, it has not been demonstrated to the Court that any of the defendants have actually been subjected to sufficient punitive damage judgments so as to justify the limitation of such damages in the present cases. *See generally, In re Federal Skywalk Cases*, 680 F.2d 1175, 1182 (8th Cir.1982) (possibility of multiple exemplary damage claims too speculative to qualify the assets that would pay such claims as a limited fund for purposes of federal interpleader). The parties have indicated that a small number of punitive damage judgments have been handed down but that a number of these judgments have been appealed or settled.[3] Without con-

---

1. For a similar treatment of the issue, *see Maxey v. Freightliner Corp.*, 450 F.Supp. 955, 962–63 (N.D.Texas 1978), *aff'd*, 623 F.2d 395 (5th Cir. 1980), *modified*, 665 F.2d 1367 (5th Cir.1982).

2. For a similar ruling, *see de Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1231–32 (10th Cir.1970).

3. At page 4 of the Affidavit of Dennis R. LaFiura attached to the Motion for Partial Summary Judgment filed by Raymark Industries that rais-

vincing evidence that these defendants have actually been subjected to judgments for punitive damages that in fact threaten their corporate existence, this Court finds it impossible to take the unprecedented step advocated by the defendants to deny these personal injury plaintiffs any opportunity to recover exemplary damages.

This ruling must not be construed as this Court's final position on the merits of the defendants' arguments. The justification ascribed for the allowance of punitive damages is that they serve as punishment to the wrongdoer and as a deterrent to others; compensation of the victim is not a purpose. *Briner v. Hyslop,* 337 N.W.2d 858, 865 (Iowa 1983). If it can be conclusively demonstrated to this Court that any defendant in this action has been subjected to judgments for punitive damages to such a degree that further awards would not promote the goals of such damages in Iowa, this Court may reconsider this ruling in light of such circumstances. This does not mean, however, that the Court's ruling would necessarily be different should such circumstances be presented, but only that the Court would be willing to reconsider upon the revelation of new or additional facts. The Court is aware of the admonition made in *Moran, supra,* that this area is more properly left to legislatures. While agreeing with this position in a general sense, the Court also feels it is a duty of the judicial system to modify the common law where it is "varied by custom, not founded in reason, or not consonant to the genius and manners of the people." *Goetzman v. Wichern,* 327 N.W.2d 742, 751 (Iowa 1983). The Court will, therefore, deny for the present time these motions to strike the plaintiff's claims for punitive damages based upon the possibility of multiple judgments, with leave for the defendants to reassert the motions at trial.

IT IS THEREFORE ORDERED that the motion for partial summary judgment filed by Defendant Celotex on August 31, 1983

in the above-named cases and joined by Defendant Keene on September 6, 1983; Defendant GAF on September 8, 1983; Defendant Fibreboard on September 12, 1983; Defendant Owens-Corning on October 18, 1983; and Defendant Raymark on October 24, 1983, be denied.

es the identical issues contained in ¶¶ 2 and 3 of the Celotex motion, it is indicated that Raymark has been subjected to four judgments for exemplary damages totaling $649,000. Two of these judgments have been appealed and one has been settled, leaving a single judgment of $1,000 for exemplary damages standing without challenge.