459 So.2d 375 (1984)
The CELOTEX CORPORATION, Appellant,
v.
Leonard H. Pickett, Sr., and Linda N. Pickett, His Wife, Appellees.
No. AW-264.
District Court of Appeal of Florida, First District.
November 6, 1984.
Rehearing Denied December 17, 1984.
Charles P. Schropp and Raymond T. Elligett, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for appellant.
Wayne Hogan, of Brown, Terrell, Hogan & Ellis, P.A., Jacksonville, for appellees.
WIGGINTON, Judge.
Appellant, Celotex Corporation, appeals a judgment entered pursuant to a jury verdict assessing compensatory and punitive damages in favor of appellee Pickett and his wife. The Picketts brought this suit against Celotex, in its capacity as successor in interest to the Philip Carey Manufacturing Company (Philip Carey), and other defendants seeking damages for negligence and strict liability arising from Mr. Pickett's exposure to asbestos in the 1960's. We affirm.
Appellee Pickett worked in a shipyard in Jacksonville from 1965 through June, 1968, as an insulator on ships and in the carpenter's shop and machine department. According to his testimony, 95 percent of the cement he used in his work was Philip Carey asbestos cement. Extensive evidence was presented at trial as to negligence on the part of Philip Carey and as to the nature of appellee's lung problems and the devastating effects on the human body resulting from exposure to asbestos. Finding that Philip Carey, as predecessor of *376 Celotex, was negligent in placing "asbestos-containing insulation products on the market with a defect" that caused injury to appellee Pickett, the jury awarded compensatory damages to appellee of $500,000 and to his wife of $15,000. The jury also found that Philip Carey acted so as to warrant punitive damages which were assessed in the amount of $100,000 against Celotex. Appellant has raised several issues on appeal which merit discussion.

Punitive Damages Against A Successor Corporation.
Celotex argues that punitive damages should not be assessed against it as a statutory successor corporation for a predecessor's actions. Evidence at trial gave the following history of the chain of ownership leading to Celotex's merger with Philip Carey. The Philip Carey Corporation was begun in 1888 and subsequently merged with Glen Alden Corporation in 1967. Thereafter, Philip Carey merged with another Glen Alden subsidiary, Briggs Manufacturing Company, and became known as Panacon Corporation. Celotex purchased Glen Alden's controlling interest in Panacon in 1972 and later purchased the remaining shares of Panacon and merged it into Celotex.[1]
In Bernard v. Kee Manufacturing Company, Inc., 409 So.2d 1047 (Fla. 1982), the court recognized that the general rule that no liability survives in a successor even for compensatory damages has several exceptions, two of which are: when the successor expressly or impliedly assumes obligations of the predecessor and when the transaction is a de facto merger. Additionally, the Florida Legislature has enacted section 607.231(3), Florida Statutes, which provides that when a merger or consolidation has been effected:
(c) Such surviving or new corporation shall have all the rights, privileges, immunities, and powers, and shall be subject to all the duties and liabilities, of a corporation organized under this chapter. (Emphasis supplied).
Celotex concedes that it is liable, pursuant to the merger, for the compensatory damages awarded to appellees.
In Hanlon v. Johns-Manville Sales Corporation, et al., 599 F. Supp. 376 (N.D. Iowa 1984), in dealing with the same defendant, Celotex, and the question of punitive damages against successor corporations, the court concluded that Celotex could be held liable for punitive damages transposed from its predecessor corporation, Panacon. The court based that decision on the provision in Iowa law, very similar to the exceptions recognized in the Bernard case, that a successor can be held responsible for the liabilities of the predecessor corporation where there was an express agreement to assume liability or where there was a consolidation or merger. The court stated that section 11 of the merger agreement between Panacon and Celotex provides in part that "all debts, liabilities and duties of Panacon shall upon the effective date of the merger attach to Celotex and may be enforced against it to the same extent as if such debt, liabilities and duties had been incurred or contracted by Celotex." Similarly, under Florida law, specifically section 607.231(3), Florida Statutes, and the Bernard case, Celotex as a successor corporation due to merger, may be held liable for all liabilities of its predecessor corporation, including punitive damages.
Although authority exists to the contrary,[2] the greater weight of authority from other jurisdictions supports the conclusion we have reached based on Florida law. In Neal v. Carey Canadian Mines, Ltd., 548 F. Supp. 357 (E.D.Pa. 1982), Celotex was found liable for punitive damages *377 as a successor corporation of Philip Carey in the same circumstances as are present here. See also Martin v. Johns-Manville Corp., 469 A.2d 655 (Pa.Super. 1983), in which the court found a sufficient degree of identity between Celotex and Philip Carey to justify an award of punitive damages against Celotex as Philip Carey's successor.
In Hanlon, as in the instant case, Celotex argued that the justifications for the imposition of punitive damages  punishment and deterrence  would not be met by imposing such liability on Celotex since Celotex is not the guilty party in this instance. The Hanlon court also found that argument of Celotex unpersuasive. We agree.
In Johns-Manville Sales Corporation v. Janssens, ___ So.2d ___, No. AJ-109 (Fla. 1st DCA September 26, 1984) [9 F.L.W. 2048], this Court rejected Johns-Manville's contention that punitive damages should not be allowed in that case because the rationale of punishment and deterrence underlying the concept of punitive damages was absent since the people who will bear the award are current management, directors, shareholders, employees and customers who had nothing to do with the alleged misconduct and lack of warnings on asbestos products in the 1930's, 1940's and 1950's; that since the actual wrongdoers have long been replaced at Johns-Manville, the award can neither punish the absent wrongdoers nor deter them from continued misconduct in the future. This court concluded that a corporate entity continues to be liable for its past tortious acts, regardless of any change in ownership, its directors, or the personnel through whom it acts. The court further recognized that punitive damages operate not only to punish the actual wrongdoer, but also, by way of example, to deter others from committing similar wrongs. Compare also Martin.

Punitive Damages in Mass Tort Litigation.
Celotex also argues that punitive damage awards have no place in the mass tort litigation setting. This argument arises from the fact that Celotex and other asbestos defendants are currently defending a large number of civil suits across the country engendered by the same products and similar claims that are the subject of the instant action. Celotex argues that punitive damages are inappropriate under these circumstances since the defendants are being exposed to the possibility of exhaustion of corporate assets contrary to the well recognized principle that punitive damages are improper when they would serve to bankrupt the defending tort-feasor. Arab Termite and Pest Control v. Jenkins, 409 So.2d 1039 (Fla. 1982). Although it did not rule on this point, the court in Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir.1967) recognized the merit in this argument and reflected upon the practical need to limit punitive recoveries in mass tort litigation in order to avoid depletion of assets which would thereupon preclude latecoming plaintiffs from any recovery at all. Also, in Jackson v. Johns-Manville Sales Corporation, 727 F.2d 506 (5th Cir.1984), the court, observing that the basic policy objectives of punitive damages are satisfied in mass tort litigations by the multiple exposure to compensatory damages, ruled in favor of the asbestos companies on this point. However, rehearing en banc has been ordered in the Jackson decision at 727 F.2d 506, 533. Pursuant to Fifth Circuit Rule 17, the effect of granting a rehearing en banc is to vacate the previous opinion.
Celotex's argument on this point has been rejected by other courts. Moran v. Johns-Manville Sales Corporation, 691 F.2d 811 (6th Cir.1982); Fischer v. Johns-Manville Corporation, 472 A.2d 577 (N.J. Super. A.D. 1984); Hansen v. Johns-Manville Products Corporation, 734 F.2d 1036 (5th Cir.1984); Neal, supra; Martin, supra; and Hanlon, supra. We agree with this Court's recent opinion in Janssens, supra, that followed the reasoning of the above authorities on this issue and decline to adopt a contrary view immunizing asbestos companies, and more particularly appellant, from punitive damage awards in mass tort litigation.
*378 We have considered appellant's remaining two points and find them to be without merit.
AFFIRMED.
JOANOS and BARFIELD, JJ., concur.
NOTES
[1] See In re Related Asbestos Cases, 566 F. Supp. 818 (N.D.Cal. 1983) for a more detailed review of the history of this merger. According to that opinion, none of the shareholders of Panacon became shareholders of Celotex.
[2] In In re Related Asbestos Cases, the court specifically ruled that Celotex could not be found liable for punitive damages as the successor corporation to Panacon. However, that case was based upon California law and not Florida law.