575 A.2d 758

Warren G. MILLER, Individually and t/a Atlantic Fitness Products, et al.

v.

NISSEN CORPORATION.

No. 1538, Sept. Term, 1989.

Court of Special Appeals of Maryland.

June 27, 1990.

A. Ronald Rubin (Nancy B. Gertner, on the brief), Baltimore, for appellant, Brandt.

John B. Sinclair, Carol A. O'Day and Miles & Stockbridge, on the brief, Baltimore, for appellant Atlantic Fitness Products.

Daniel J. Moore (Thomas M. Trezise, Stephen E. Marshall and Semmes, Bowen & Semmes, on the brief), Towson, for appellee.

Argued before ALPERT, ROBERT M. BELL and CATHELL, JJ.

CATHELL, Judge.

Appellants, Warren G. Miller, individually and t/a Atlantic Fitness Products, Faye Miller, individually and t/a Atlantic Fitness Products, (collectively referred to hereinafter as "Atlantic Fitness,") and Frederick B. Brandt, allege that the Circuit Court for Baltimore City erred in granting Summary Judgment in favor of appellee, Nissen Corporation (referred to hereinafter as "Nissen") in an action for products liabili-

ty. We agree, and for the reasons set out below, we reverse.

In January, 1981, appellant Brandt, a plaintiff below, purchased a Model A Tredex Treadmill, manufactured by American Tredex Corporation ("American Tredex"), from Atlantic Fitness. In July 1981, pursuant to an Asset Purchase Agreement, Nissen bought all the assets of American Tredex, as well as its goodwill and the name, American Tredex. The former American Tredex Corporation assumed the name AT Corporation. In November 1982, appellant Brandt received correspondence and obtained replacement parts for the treadmill from Nissen. In October 1986, appellant Brandt, a surgeon, was injured when he caught one of his fingers in the treadmill's operating mechanism while performing an adjustment to the treadmill.

Litigation in this matter began on or about September 1, 1988, when Mr. Brandt and his wife, Annette Brandt, filed a complaint in the Circuit Court for Baltimore City against American Tredex, AT Corporation, Nissen and Atlantic Fitness, alleging negligence, strict liability, breach of express and implied warranties of merchantability and fitness, and loss of consortium as a result of the injury. On September 22, 1988, Atlantic Fitness answered the complaint, denying liability and asserting affirmative defenses. On December 2, 1988, Nissen answered, also denying liability and asserting affirmative defenses.

In May 1989, Nissen filed a Motion for Summary Judgment, contending that it was not responsible for any injuries involving equipment sold or manufactured by American Tredex prior to the date of the Asset Purchase Agreement, July 31, 1981.[1] On May 23, 1989, Atlantic Fitness filed a cross-claim against Nissen for indemnity and contribution, as well as a Memorandum in Opposition to Nissen's Motion

---

1. The Asset Purchase Agreement specifically provided that Nissen would not assume any liability for injuries arising from any product sold by American Tredex prior to the date of execution of the agreement.

for Summary Judgment, based on the fact that Nissen was liable as a successor in interest to American Tredex as a result of the continuity of enterprise between Nissen and American Tredex. Plaintiffs below filed an Answer to Nissen's Motion for Summary Judgment, as well as Mr. Brandt's Affidavit, stating that on November 30, 1982, Mr. Brandt purchased replacement parts for the treadmill from Nissen.

The trial court granted Nissen's Motion for Summary Judgment on July 26, 1989, and at the request of Atlantic Fitness, the trial judge entered a final order, rendering the matter appealable to this Court under Maryland Rule 2–602(b). The primary issues which all appellants raise include:

1. Whether the trial court erred in granting summary judgment for Nissen because it failed to acknowledge that Maryland recognizes the continuity of enterprise doctrine?

2. Whether the trial court erred in granting summary judgment since there existed a genuine dispute of material fact?

Our reversal of the trial judge's grant of summary judgment on these grounds eliminates the necessity of addressing additional issues raised by particular appellants.

### Continuity of Enterprise

At the outset, we find it interesting to note that both the appellants and the appellee relied on the same line of cases to support their diametrically opposing claims regarding this issue. There are several possible explanations for this. We choose to believe that this phenomenon occurred because of an insufficient body of law in Maryland regarding the liability of a successor corporation in an action for products liability. We will endeavor to remedy that situation.

Judge Paul V. Niemeyer, writing for the United States District Court for the District of Maryland, in *Smith v. Navistar International Transportation Corp.*, 687

F.Supp. 201 (D.Md.1988), noted the absence of Maryland case law on successor corporation liability, and was called on to forecast what Maryland courts would decide if confronted with that question.

Ordinarily, a corporation that acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation. Exceptions to the general principle have developed to impose liability on the successor corporation when: (1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts. *Knapp v. North American Rockwell Corporation,* 506 F.2d 361 (3rd Cir.1974); *Hanlon v. Johns–Manville Sales Corporation,* 599 F.Supp. 376 (N.D.Iowa 1984).

Although the Maryland courts have not had occasion to address this issue, *we have no reason to doubt that the general exceptions noted above would not [sic] be accepted as they are in most jurisdictions,* and we therefore conclude that this is the law of Maryland unless and until the Court of Appeals suggests otherwise.

*Navistar,* 687 F.Supp. at 204 (citations omitted, emphasis added).

The inclusion of the word "not," in the italicized portion of the quote from Judge Niemeyer, is an obvious misprint. When the opinion is read in its entirety, it is clear that Judge Niemeyer intended it to mean that Maryland law conforms to that of the majority of other jurisdictions in adopting the four exceptions to the general principle that successor corporations are not liable for the debts and liabilities of a predecessor corporation.

The opinion forecasts specifically that Maryland would not adopt the minority position that attaches tort liability to

the transfer of a product line, as do California and New Jersey.[2] "The theory suggested by these cases is that the burdens of product liability flow with the benefits. We are not prepared to say that Maryland will adopt this exception ...." *Navistar*, 687 F.Supp. at 204.

Judge Niemeyer continues by detailing two other cases, *Polius v. Clark Equipment Co.*, 608 F.Supp. 1541 (D.St. Croix, V.I., 1985) *rev'd* 802 F.2d 75 (3d Cir.1986) (Mansmann, J. dissenting) and *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir.1974), where the continuation of enterprise doctrine was at issue.[3] He concludes by granting summary judgment for the successor corporation, not because the continuation of enterprise doctrine does not apply in Maryland, but because of its inapplicability to that particular case. The predecessor corporation, having sold off only a small percentage of its operations was still available to be sued. In this regard, Judge Niemeyer writes:

The underlying policy for imposing product liability on a successor corporation, in the absence of an expressed assumption of liability, under this doctrine of continuity

---

**2.** *See Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal Rptr. 574, 560 P.2d 3 (1977) and *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981). Pennsylvania has also accepted the product line theory of enterprise liability. *See Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981).

**3.** Appellee asserts vigorously that *Navistar* was grounded on an unsound foundation, since *Polius* was subsequently reversed by the Federal Circuit Court and since the holding in *Cyr* was later discounted in *Simoneau v. South Bend Lathe, Inc.*, 543 A.2d 407, 409 (N.H. 1988). In *Polius*, 802 F.2d 75 (3d Cir.1986), however, we are persuaded by the dissenting judge who notes that, absent a relevant statute, Virgin Island law looks to the *Restatement*. In *Restatement (Second) of Torts* § 402A (1965), the continuity of enterprise doctrine is "tacitly extant." *Polius, supra*, at 86–88. Further, the *Simoneau* case, rather than overruling *Cyr*, actually held that New Hampshire law did not embrace the *product line* doctrine of strict liability and its associated theory of *risk spreading*. The *Simoneau* court simply notes, in the concluding paragraph of its opinion, that "to the extent that *Cyr* does suggest that we embrace risk spreading, it is no longer a valid interpretation of New Hampshire law." *Simoneau*, 543 A.2d at 409. We, therefore, do not agree with appellee that the rationale of *Navistar* has been compromised by these subsequent cases.

of enterprise is the demonstration that the successor corporation has taken the place of the predecessor corporation and therefore is presumed to have assumed the liability. In each of the cases cited, the predecessor corporation dissolved, went out of business or was no longer available to be sued.

In the present case, UOP [the predecessor corporation] sold off only a portion of its business representing approximately five percent of its total operations. UOP continued as a viable corporation and *was available to be sued throughout the applicable period.* The circumstances presented here do not fall within the guidelines established by Polius and, more importantly, within the underlying policy that the successor corporation has merely stepped into the shoes of the predecessor corporation and therefore is assumed to take on liability.

*Navistar,* 687 F.Supp. at 206 (emphasis added).

The trial judge in the case at hand, however, apparently took out of context that sentence in Judge Niemeyer's opinion containing the misprint, and interpreted it to mean exactly the opposite of what the author intended. The trial judge's written ruling on Nissen's Motion for Summary Judgment stated:

Although he explored these exceptions [to the general principle of successor corporations' nonliability] in detail in *Navistar,* Judge Niemeyer pointed out that "[a]lthough the Maryland Courts have not had occasion to address this issue, we have no reason to doubt that the general exceptions ... *would not* be accepted as they are in most jurisdictions" and concluded that the general principle of non-liability is "the law in Maryland unless and until the Court of Appeals suggests otherwise." *Navistar at 204.*

*Thus, it is apparent that the "substantial continuation" exception advocated by the parties in this case must fail. Nissen can only be liable for the debts and obligations of American Tredex to the extent provided in the Articles of Transfer. Corps. Section 3–115(c). The Articles of Transfer in this case exclude Nissen*

*from liability for any negligence of American Tredex and, consequently, Nissen is not liable to the Plaintiffs for any negligent acts of its predecessor.*

*This Court declines to enlarge the law by accepting the parties' "substantial continuation" argument....*
[emphasis in original]

The trial judge in the case at bar misinterpreted the import of Judge Niemeyer's holding and, as a result, applied incorrect law to the facts of the case in determining whether to grant summary judgment.

 We believe Judge Niemeyer's forecast of Maryland law to be correct. We hold that liability for dangerous or defective products will be imposed on a successor corporation when one of the four exceptions to the general rule of nonliability is met: (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts. We adopt an expanded interpretation of the third exception, which Judge Niemeyer terms the "substantial continuation" exception. This exception to the general rule of nonliability would only apply where the predecessor corporation is functionally extinct at the time the action is filed, subject to any applicable statute of limitations. We specifically reject the product line theory of corporate successor liability and the notion of risk spreading associated therewith, as they represent radical departures from the firmly established general rule.[4]

---

**4.** We note that Judge Smalkin, also of the Federal District Court for Maryland, addressed the question of corporate successor liability, in *Giraldi v. Sears, Roebuck & Co.,* 687 F.Supp. 987 (D.Md.1988). He reaches the opposite conclusion from Judge Niemeyer, and states:
This Court forecasts that the Court of Appeals of Maryland would accept the "pure" version of the traditional rule, because reported Maryland cases recognize limited successor liability in the corporate-matters sphere, see *Colandrea v. Colandrea,* 42 Md.App. 421, 433–35, 401 A.2d 480, 487–88 (1979), and would seemingly embrace the philosophy of not holding purchasing corporations responsible

Our assessment of Judge Niemeyer's analysis of Maryland law and our holding echoes our earlier decision in *Baltimore Luggage v. Holtzman,* 80 Md.App. 282, 562 A.2d 1286 (1989), *cert. denied,* 318 Md. 323, 568 A.2d 28 (1990). *Baltimore Luggage* involved an employee who sued a successor corporation for fringe benefits accrued under an employment agreement with its predecessor corporation. Judge Rosalyn B. Bell, writing for this Court, stated that Judge Niemeyer's decision in *Navistar* did not apply to the *Baltimore Luggage* decision, since *Navistar* involved products liability and not contractual obligations of the predecessor corporation. Judge Bell noted, however, in dicta, that:

> *Navistar* uses the continuity of enterprise theory, which expands upon the existing mere continuation exception, in analyzing products liability.... The reason for an expansion of the continuity of enterprise when dealing with product liability is clear—that is, the need to provide protection to a consumer who has no information relative to the internal corporate changes.

*Baltimore Luggage,* 80 Md.App. at 296, n. 10, 562 A.2d 1286.

### Summary Judgment

At oral argument, counsel for Nissen asked this Court to hold that, despite the trial judge's erroneous decision regarding the adoption of the continuity of enterprise doctrine, the grant of summary judgment nevertheless was appropriate, since the appellees failed to demonstrate a

---

for unliquidated tort liabilities of the seller. In this Court's view, however, the Maryland courts would neither adopt the product line theory nor otherwise take a liberal approach to the exceptions to the traditional rule.

*Id.* at 991. Judge Smalkin was correct with regard to our rejection of the product line theory. However, while we believe that Judge Smalkin's forecast indicates an accurate perception of the tendencies of earlier Maryland courts, Judge Niemeyer's observations more closely predict the current legal climate in Maryland regarding products liability.

genuine dispute as to the question of Nissen's substantial continuation of the enterprise of American Tredex. Were this to be the situation, appellant contends that *Robeson v. State*, 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654, provides authority for us to affirm a decision by a trial judge which is correct although for a different reason than that relied on by the trial judge. We decline to do so.

Pursuant to Maryland Rule 2–501, in reviewing the propriety of a trial court's grant of a motion for summary judgment, the appellate court must first determine whether there is a genuine dispute as to any material fact, and if not, whether the party requesting summary judgment to be entered in its favor is entitled to judgment as a matter of law. *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 621, 495 A.2d 838 (1985); *Washington Homes, Inc. v. Interstate Land Dev. Co.*, 281 Md. 712, 382 A.2d 555 (1978). Where the facts are susceptible to more than one permissible inference, the choice between inferences should be made by the trier of fact, and should not be resolved on a motion for summary judgment. *Barb v. Wallace*, 45 Md. App. 271, 412 A.2d 1314 (1980); *Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 401 A.2d 1013 (1979). When a determination is made as to whether a factual dispute exists, *all inferences must be resolved against the moving party*, even if the underlying facts are undisputed. *Berkey v. Delia*, 287 Md. 302, 413 A.2d 170 (1980); *Maloney v. Carling Nat'l Breweries, Inc.*, 52 Md.App. 556, 451 A.2d 343 (1982).

Nissen included a copy of the asset purchase agreement as an exhibit with its motion for summary judgment. It also included an affidavit by its vice president, John K. Geist, affirming, in pertinent part, that Nissen acquired an interest in American Tredex Corporation on July 31, 1981, and that Nissen neither designed, manufactured or sold any American Tredex treadmill prior to that date. Atlantic Fitness filed a memorandum in opposition to that motion,

which relies on the facts contained in the asset purchase agreement as a basis for establishing Nissen's liability. That memorandum asserts that certain provisions in the asset purchase agreement (such as the purchase of its business goodwill, the title and interest in the name "American Tredex Corporation," the total inventory, patents and trademarks, customer lists, contract rights, prepaid receivables, warranties, and the continued employment of two previous high level employees of the predecessor corporation, to name but a few) [5] evidence an intent on the part of Nissen to continue substantially the business of American Tredex. Additionally, the agreement creates an inference that the selling corporation must remain in business for a minimum of five years to "indemnify, reimburse and hold [Nissen] harmless" from liability. An inference could be made that this provision indicates that Nissen would be subject to suit after the expiration of the five-year indemnification period. Appellant, Atlantic Fitness, asserts therefore that "the totality of the transaction ... demonstrates a basic continuity of the business of American Tredex by Nissen." In addition, Appellant Brandt filed a response to Nissen's motion for summary judgment, to which he attached an affidavit showing that he had purchased replacement parts for the treadmill in question from Nissen Corporation.

Based on this information, we are unable to agree with Nissen's argument that the trial judge correctly granted its motion for summary judgment, despite his erroneous determination that Maryland law did not embrace the continuity of enterprise doctrine of liability for successor corporations. There may or may not be a genuine dispute as to the facts relating to this issue. There is, however, a clear dispute as

---

5. Appellee also purchased from American Tredex *"all* molds, machinery, fixtures, equipment, computers, software, vehicles, machinery and equipment tools, dies, jigs, fixtures and hardware, and other fixed assets of the Business...." (emphasis added) An inference *might* be made that in so doing, Nissen purchased the manufacturing capacity of American Tredex.

to the inferences which arise from those facts. We therefore reverse the trial judge's grant of summary judgment in favor of Nissen, and remand for further proceedings in light of this opinion.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.