Kenneth WARD, et al., Plaintiffs,

v.

84 LUMBER, Defendant.

Civ. No. S 90–853.

United States District Court,
D. Maryland.

March 13, 1991.

Donald J. Arnold, Bel Air, Md., for plaintiffs.

C. Lamar Garren, Anthony L. Meagher, Piper & Marbury, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge:

In a case removed to this Court on diversity grounds, Mr. Kenneth Ward and his mother claimed that the defendant, a former employer of Mr. Ward (who worked for it as an at-will employee), wrongfully refused to fill out and return to Mr. Ward or forward to the Globe Life Insurance Company a claim form needed by him to activate credit disability insurance that would have covered the installment payments on a pick-up truck he had purchased as his personal vehicle. (His mother was a co-obligor on the purchase-money loan financing the truck.) It is claimed by the Wards that, because 84 Lumber would not fill out the form until disposition of Mr. Ward's pending Workers' Compensation case, they fell three months behind in their truck payments and, on the advice of a banker, decided voluntarily to surrender possession of the truck to the secured party rather than to have a non-consensual repossession occur, to avoid the stigma of such a repossession. The Wards claim compensatory damages for the deficiency they owed on the truck and for the harm allegedly done to their credit ratings by their late payments on, and eventual surrender of, the truck; they also seek punitive damages. No claim is made for business or trade loss. The defendant has moved for summary judgment, and the matter has been briefed, but no oral argument appears necessary.

For the purposes of the pending motion, the Court will take the facts and their inferences in the light most favorable to the Wards and assume the truth of their deposition testimony and that of the witnesses submitted in support of their opposition to the defendant's motion. But no matter how undisputed are the facts on summary judgment or how much in a plaintiff's favor they are viewed, a plaintiff who opposes summary judgment must necessarily show that these facts, when applied to some recognized principle(s) of law, would result in a judgment in the plaintiff's favor. Otherwise, there being no theory to support recovery, the defendant is "clearly entitled" to summary judgment in its favor as a matter of law, and the same must be entered for it under Fed.R.Civ.P. 56(c).

The trouble with the present plaintiffs' case is precisely this—that there is no theory of recovery recognized in Maryland that will support their complaint. In the absence of an applicable statute or case law from the Court of Appeals of Maryland on point, this Court must anticipate Maryland common law as that Court would decide it. *See, e.g., Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981).

■ The Court will first examine plaintiffs' case *ex contractu.* Because plaintiff indisputably was an at-will employee, there was obviously no express contract which, by its terms, obligated 84 Lumber to fill out and/or forward the insurance claim form to Globe Life, nor was there any implied contract so obligating it, for the reason that covenants of the sort that would cast a duty on the employer in this case—a species of "good faith and fair dealing" covenant—are not implied in an at-will employment relationship under Ma-

ryland law. *See Borowski v. Vitro Corp.,* 634 F.Supp. 252, 258 (D.Md.1986), *rev'd. table,* 829 F.2d 1119 (4th Cir.1987). Even though *Borowski* was reversed without a published opinion (on a ground having nothing to do with this point and with no discussion of this point, *see Borowski v. Vitro Corp.,* 829 F.2d 1119 (4th Cir.1987)), other judges of this Court have recognized it as correctly stating the law on this particular point (*e.g., Butler v. Westinghouse Electric Corp.,* 690 F.Supp. 424, 429 (D.Md. 1987) (Murray, Sr.J.)), and the undersigned Judge also thinks that *Borowski* correctly states Maryland's law on this point.

■ Turning to plaintiffs' theories *ex delicto,* the Court likewise discerns no recognized theory of recovery. Maryland would not, in this Court's opinion, recognize the theory of *"prima facie* tort," which appears to be a sort of safety net tort available to a plaintiff to whom something bad has happened which has never been recognized, over the millennium (roughly speaking) during which our body of law has developed, as amounting to a wrong worthy of redress in a court of law. *See Miller v. Fairchild Industries, Inc.,* 668 F.Supp. 461, 468 (D.Md.1987). *See also Witmeyer v. Bhd. of Ry. Airline & S.S. Clerks, etc.,* 779 F.2d 206, 209 (4th Cir. 1985) (No such tort under Maryland law.) This Court (assuming that *Witmeyer* is not binding precedent because it discusses Maryland, rather than federal, law), forecasting Maryland law, cannot foresee the Court of Appeals of Maryland adopting the theory of *"prima facie* tort," which would cap the so-called "tort revolution" by turning every conceivable slight, insult, injury, or wrong into a tort cause of action, replete with punitive damages. This is not imaginable, even given Maryland's more recent "progressive" view of tort law. *Cf. Miller v. Nissen Corp.,* 83 Md.App. 448, 456–57 n. 4, 575 A.2d 758 (1990).

■ Finally, the Court sees no merit in plaintiffs' claim for tortious interference by 84 Lumber with the plaintiffs' contractual relationship with Globe Life. Because there was no breach of the insurance contract, there is no claim here that 84 Lumber induced a breach of contract, which is the classical form of the tort, committed, for example, where a defendant maliciously conveys information to a third party to induce that party to abandon a contractual relationship with the plaintiff. It is true, as plaintiffs argue, that the Court of Special Appeals of Maryland, in *Lake Shore Investors v. Rite Aid Corp.,* 67 Md.App. 743, 509 A.2d 727 (1986), held that the tort of "interference with economic relations" does not require a showing that the defendant induced a breach of a contract between plaintiff and a third party. 67 Md. App. at 753–54, 509 A.2d 727. But it is also true that the authority from the Court of Appeals of Maryland upon which the Court of Special Appeals relied in so holding limited the tort to one of interference with, and damage to, "another in his business or occupation." *Natural Design, Inc. v. The Rouse Co.,* 302 Md. 47, 69, 485 A.2d 663 (1984).

Such a limitation is consistent with the development of this tort under the common law both of England, whence it originated, and of Maryland, as discussed in *Lake Shore,* 67 Md.App. at 747–48, 509 A.2d 727, especially the case of *The Sumwalt Ice and Coal Co. v. The Knickerbocker Ice Co.,* 114 Md. 403, 414, 80 A. 48 (1911) (referring to the tort as unlawful or wrongful interference with someone's "lawful trade, business, or calling"). None of the cases is apposite to the present situation, in which the matter at issue is simply a consumer credit insurance contract, entered into by plaintiff for his personal convenience, and not out of any business or trade purpose. Indeed, the most recent pronouncement on this tort from the Court of Appeals of Maryland speaks of this branch of the tort—where there is no frank breach of contract—specifically in terms of an interference with "business relationships." *K & K Management v. Lee,* 316 Md. 137, 154–55, 557 A.2d 965 (1989). The tort is, thus, at least where there is no actual breach of contract induced by defendant's conduct, quite properly limited to situations arising in the business environment, and it does not furnish a basis for plaintiffs' recovery here, where the con-

tractual relationship allegedly interfered with by defendant bears no relationship to either plaintiff's trade, calling, or business.

For the reasons stated, an Order will be entered separately, granting the defendant's motion for summary judgment.